## Goucher v. Louisville Railway Company.

(Decided Feb. 17, 1933.)

ROBERT HUBBARD for appellant.

PETER, LEE, TABB, KRIEGER & HEYBURN for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Rebecca Goucher, was seriously injured when the automobile driven by her husband and in which she was riding collided with a safety zone post located near the intersection of Eleventh and Broadway streets in Louisville, Ky. The accident occurred at about 8 o'clock in the evening of July 23, 1928. Alleging that the safety zone post had been erected and maintained by the Louisville Railway Company, that it was an unreasonable obstruction in the street, and that the railway company had negligently failed to place a light on the post on the night of the accident, the appellant brought this suit against the railway company to recover damages for her injuries.

The answer was a traverse and a plea of contributory negligence. An amended petition was filed in which it was alleged that the safety zone post was an unreasonable and dangerous obstruction in the street, and its erection was a violation of section 4338

of the Kentucky Statutes, and in a second amended petition it was alleged that its erection was in violation of subsection 5 of section 768 of the Kentucky Statutes. Demurrers to the amended petition and second amended petition were sustained. Upon the trial of the case, the defendant's motion for a directed verdict in its favor was sustained at the conclusion of the plaintiff's evidence, and she has appealed.

Appellant is seeking to recover damages for her injuries on the ground that the railway company wrongfully erected the post which was a dangerous obstruction in the street and a nuisance, and negligently failed to have it properly lighted on the night of the accident. The evidence discloses that 54 safety zone posts were erected in Broadway street at various street intersections during the year 1926. The posts were erected at street car stops, and their purpose was to protect pedestrains leaving or entering street cars from injury by vehicles using the street.

The posts as described by a witness were constructed as follows:

"The concrete base is three feet, six inches square, about two feet high and is situated about three feet six inches from the closest rail. On top of that there was a recessed concrete structure two feet six inches square, about six inches high. On top of this second recessed concrete structure there was a wooden tower three feet six inches high, on top of which at night was placed the lamp. Pins were driven into the street before the lower concrete was placed in order that the concrete might be held down."

During the year 1925 a great many persons were injured while leaving or entering street cars at street intersections, and in November or December of that year the manager of the Louisville safety council took up with the city and street railway company the matter of insuring the safety of street car passengers. An investigation disclosed that systems of safety zones for pedestrains had been established in practically all of the large cities of the country. Conferences between the board of public safety and the board of public works of the city and representatives of the street railway company were held, and it was finally agreed that

safety zones should be established at certain points in the streets along the street railway tracks, and that the street railway company should erect the platforms and posts and the city should maintain them and keep the posts or towers properly lighted at night. The railway company erected the posts at a cost of $5,400 to it, and the city thereafter paid for all repairs, and its employees performed the duty of placing lamps on the towers at night.

There is no evidence, and it is not claimed that the posts were negligently contructed, but it is claimed that they constituted an obstruction in the street, and were dangerous to travelers on the street. The sections of the statute relied upon clearly have no application, since they have no reference to structures placed in a street for the protection of pedestrians who necessarily must use the street. The large increase in the use of streets by motor-driven vehicles has necessitated the adoption of systems similar to the one adopted in Louisville for the protection of persons leaving or entering street cars, and the right of the drivers of vehicles to the use of an unobstructed street must give way to the higher right of pedestrains to protection from injury. The safety zone posts are intended for the protection of pedestrains using the street, and, if properly constructed, do not constitute a nuisance. Such structures are demanded by the necessities of the times, and constitute a necessary incident to the use of the street under modern conditions.

It is argued that the safety zone posts were erected by the street railway company for its benefit, but it is only indirectly benefited. The primary purpose was to protect pedestrains using the street. The appellee had no duty in regard to the safety zone posts after they were erected, but the duty of maintaining them and keeping them lighted at night was assumed by the city. It was claimed by appellant that there was no light on the safety post at the time the accident occurred, but, if failure to have the post lighted was the cause of the accident, the negligence, if any, cannot be attributed to the railway company, as it had no duty to perform in that respect.

The city, under its police power, nad authority to establish safety zones on public streets, and in an ordinance approved February 14, 1924, it was provided

that safety zones for pedestrains might be established by the police department with the approval of the board of public safety, and that they should be designated in a clearly visible and suitable manner. The city could have constructed and maintained the safety platforms and standards, and the mere fact that, pursuant to an agreement with the city, the appellee constructed them at its cost with the understanding that the city would thereafter maintain them and provide lights for the towers, does not render it liable.

There being no evidence of negligence on the part of the Louisville Railway Company, the court properly sustained the motion for a directed verdict in its favor.

The judgment is affirmed.

Dietzman, C. J., not sitting.